IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| THYSSENKRUPP MATERIALS NA, INC., d/b/a/ KEN-MAC METALS, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 05-3356-CV-S-RED<br>) |
| JOHNIE BAKER, | )<br>) |
| Defendant. | ) |

## ORDER

Now before the Court is Plaintiff Thyssenkrupp Materials NA, Inc.'s D/B/A Ken-Mac Metals, Motion for Summary Judgment (Doc. 36-1). Defendant Johnie Baker has not filed suggestions in opposition to Plaintiff's motion, and the time to do so has passed. After consideration of the merits of the matter, the Court finds there is no genuine issue of material fact and that summary judgment in favor of Plaintiff Ken-Mac Metals is due to be **GRANTED**.

### I. Factual Background

For purposes of Plaintiff Ken-Mac Metals's ("Ken-Mac") summary judgment motion, the following are uncontroverted, material facts. Defendant Johnie Baker ("Baker") is the former Chief Executive Officer of Landau Watercraft ("Landau"). As Chief Executive Officer, Baker executed a Buyer's Credit Application and Open Account Agreement ("Credit Application") on behalf of Landau for the purchase of aluminum from Ken-Mac. The Credit Application stated, in part, that Baker would "absolutely and unconditionally personally guarantee the full and punctual payment of any obligation of the company" and that he would "bind [himself] to pay

[Ken-Mac] on demand any sum, including all costs of collection and reasonable attorney's fees, which may become due . . . whenever the company shall fail to pay the same." Landau then entered into several purchase orders with Ken-Mac whereby Ken-Mac procured aluminum conforming to Landau's specifications. Several of the orders were shipped and invoiced. Thereafter, Landau refused to accept the remaining undelivered aluminum it had ordered. The total principal amount owed by Landau on these purchase orders was $345,040.78; of that amount, $51,290.27 represented amounts due under the invoices, and $293,750.51 represented the metal conforming to Landau's specifications that was undelivered and held in Ken-Mac's inventory. Ken-Mac subsequently sold the undelivered metal on the open market for a net loss of $1,802.08.

## II. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fry v. Holmes Freight Lines, Inc.*, 72 F. Supp. 2d 1074, 1075 (W.D. Mo. 1999). When ruling on a motion for summary judgment, the court shall view the facts in a light most favorable to the nonmoving party and allow the nonmoving party the benefit of all reasonable inferences to be drawn from the evidence. *See id.* (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Reed v. ULS Corp.*, 178 F.3d 988, 900 (8th Cir. 1999)).

Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an essential element to that party's case on

which that party will bear the burden of proof. *See Cunningham v. Kansas City Star Co.*, 995 F. Supp. 1010, 1014 (W.D. Mo. 1988) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The evidence in favor of the nonmoving party, however, must be more than "merely colorable." *Id.* "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986) (footnote omitted). The nonmoving party "may not rest upon the mere allegations or denials" of the party's pleading; instead the party's response "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If the nonmoving party does not so respond, summary judgment, if appropriate, shall be entered against the party. *Id.*

### III. Discussion

In this case, Ken-Mac seeks summary judgment on its breach of contract claim against Baker. Baker has failed to file any suggestions or affidavits in opposition to Ken-Mac's motion for summary judgment. In fact, the only response from Baker the Court has for consideration is a letter to opposing counsel which was forwarded to the Court. In the letter to opposing counsel, Baker raises two arguments in defense of Ken-Mac's claims. First, Baker argues he never intended to sign the Credit Application as a personal guarantor. Further, Baker argues that neither he nor Landau should be liable for several of the purchase orders as they were cancelled before delivery of the metal.

The Credit Application at issue states, in pertinent part, that "if legal action becomes

necessary . . . this . . . agreement will be governed as to validity, interpretation, construction, effect and in all other respects by the laws of the State of Ohio." As such, the Court will apply Ohio law in its analysis.

## A. Baker as Personal Guarantor

Ken-Mac alleges that by signing the Credit Application on behalf of Landau, Baker agreed to personally guarantee and pay the amounts due to Ken-Mac which Landau failed to pay. Baker concedes that he did not read the agreement before he signed it, but argues that he believed it to be merely an open account agreement and not a personal guarantee. Baker claims that had he known it was a personal guarantee, he would not have signed the agreement.

Under Ohio law, Baker's assertion that he did not understand the contract to be a personal guarantee carries little force. *See Hook v. Hook*, 431 N.E.2d 667, 670 (Ohio 1982). "'Ordinarily, one of full age and in possession of his faculties and able to read and write, who signs an instrument . . . may not thereafter escape the consequences by urging that he did not read it or that he relied on the representations of another as to its contents or significance.'" *Id.* (quoting *Kroeger v. Brody*, 200 N.E. 836, 839 (Ohio 1936)). Here, Baker does not claim that he relied on any representation of Ken-Mac as to the contents of the Credit Application; he simply states that he did not read the agreement and that based on the fact the document is called an 'Open Account Agreement' and not a 'Personal Guarantee,' he did not understand the agreement to be such a guarantee. Thus, "the legal and common-sensical axiom that one must read what one signs survives this case," *ABM Farms, Inc. v. Woods*, 692 N.E.2d 574, 579 (Ohio 1998), and Baker remains bound as the personal guarantor of the amounts due by Landau to Ken-Mac. As a result of Baker's personal guarantee on Landau's debt, he is required to pay the principal amount plus

interest and attorneys' fees and costs on the past due invoices.

### B. Cancellation of Undelivered Purchase Orders

Ken-Mac further alleges that it is owed for the loss incurred in selling the undelivered aluminum procured pursuant to Landau's purchase orders. Baker claims neither he nor Landau is liable for the undelivered aluminum as several of the purchase orders were cancelled prior to delivery.

According to the Ohio Revised Code, "a contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." Ohio Rev. Code Ann. § 1302.07 (West 2006). Furthermore, "[b]etween merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies [Statute of Fraud requirements] unless written notice of objection to its contents is given within ten days after it is received. Ohio Rev. Code Ann. § 1302.04 (West 2006). Here, there is no evidence in the record that Ken-Mac rejected Landau's purchase orders; in fact, Ken-Mac acted pursuant to the purchase orders by ordering the metal from the mills and by delivering part of the orders to Landau. Consequently, the purchase orders submitted by Landau to Ken-Mac represent enforceable contracts. *See Paramount Supply Co. v. Sherlin Group*, 475 N.E.2d 197, 205 (Ohio Ct. App. 1984).

Baker's argument that neither he nor Landau is liable because Landau had cancelled several of the purchase orders before delivery of the metal is without merit. When a contracting party rejects a contract before the time that party's performance is due, an anticipatory repudiation occurs and the injured party is free to resort to its remedies for breach. *Farmers*

-5-

*Comm. Co. v. Burks*, 719 N.E.2d 980, 990 (Ohio Ct. App. 1998); *see also* Ohio Rev. Code Ann. § 1302.68 (West 2006). Because the purchase orders between Landau and Ken-Mac were enforceable contracts, Landau's subsequent cancellation and refusal to pay constitute a repudiation of these purchase orders. Under the Ohio Revised Code, when a buyer repudiates a contract, the injured seller is provided a choice of remedies, including the right to sue for the contract price and the right to resell and recover damages. *See* Ohio Rev. Code Ann. § 1302.77 (West 2006). Here, Ken-Mac opted to resell the undelivered Landau metal in its inventory and was able to do so at a loss of $1,802.08. As discussed above, because Baker personally guaranteed Landau's debts, Ken-Mac is entitled to recover the loss from Baker.

## IV. Conclusion

For the aforementioned reasons, Plaintiff Thyssenkrupp Materials NA, Inc.'s D/B/A Ken-Mac Metals, Motion for Summary Judgment (Doc. 36-1) is hereby **GRANTED**. Defendant Johnie Baker, as personal guarantor of the debts of Landau Watercraft, is hereby ordered to pay Plaintiff Ken-Mac Metals the following amounts:

1. Principal amount of $53,092.35 on the past due invoices and the loss incurred in the sale of the undelivered metal;

2. Interest on the past due invoices in the amount of $12,327.87;

3. Attorneys' fees in the amount of $10,000.00; and

4. Costs in the amount of $350.00.

**IT IS SO ORDERED**.

DATED: November 16, 2006  */s/ Richard E. Dorr*
RICHARD E. DORR, JUDGE
UNITED STATES DISTRICT COURT